EAGLE PASS LUMBER CO. *v.* UNITED STATES (No. 2098).[1]

1. CONSTRUCTION, PARAGRAPH 268, TARIFF ACT OF 1913—"CORDAGE."
The term "cordage," in paragraph 268, tariff act of 1913, was not used by Congress with reference only to the rigging of ships; it is to be given its popular meaning.

2. TWISTED ISTLE FIBERS—"CORDAGE"—"BINDING TWINE."
Istle fibers twisted into a strand, used by lumber companies for tying moldings into bundles and by rope manufacturers as material for making ropes, is classified as "cordage, composed of istle," under paragraph 268, tariff act of 1913. With a showing that it is wound improperly and lacks the necessary uniformity of thickness for use on binders, it is not admissible free of duty under paragraph 415 as "binding twine manufactured from * * * istle." It should not have been classified under paragraph 284 as a manufacture of vegetable fiber not specially provided for •

United States Court of Customs Appeals, November 16, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8415 (T. D. 38632).

[Reversed.]

*Gerry & Wakefield* for appellant.

*Wm. W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Martin T. Baldwin*, special attorneys, of counsel), for the United States.

[Oral argument Oct. 5, 1921, by Mr. Wakefield and Mr. Lawrence.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Merchandise composed of 75 to 80 fibers of Mexican istle, twisted into a strand varying in thickness from one-sixteenth to one-eighth of an inch, was classified by the collector as a manufacture of vegetable fiber and assessed for duty at 35 per cent ad valorem under that part of paragraph 284 of the tariff act of 1913 which, in so far as pertinent to the case, reads as follows:

284. * * * all manufactures of flax, hemp, ramie, or other vegetable fiber, or of which these substances, or any of them, is the component material of chief value, not specially provided for in this section, 35 per centum ad valorem.

The importer protested that the merchandise was not a manufacture of vegetable fiber and claimed among other things that the importation was either cordage composed of istle dutiable at one-half cent per pound under paragraph 268, or binding twine manufactured from istle, entitled to free entry under paragraph 415. Paragraph 268 of the duty list and paragraph 415 of the free list, in so far as pertinent to the case, read as follows:

---

DUTY LIST.

268. Cables and cordage, composed of istle, * * * one-half cent per pound * * *.

FREE LIST.

415. All binding twine manufactured from * * * istle * * * of single ply and measuring not exceeding seven hundred and fifty feet to the pound.

The Board of General Appraisers overruled the protest and the importer appealed.

It appears from the evidence introduced on behalf of the protestant that in Mexico during the war istle of the kind imported was used as a binder twine on binding machines in the binding of grain. Such merchandise is used in this country by lumber companies for the tying or binding of moldings into bundles. It is not used as a binder twine for the reason that it is not wrapped for that class of work and would have to be rewound to permit of its use on binders which feed from the inside of the coil.

On behalf of the Government at least one competent witness testified to the effect that even if properly wound the merchandise could not be efficiently used on binders as binder twine for the reason that its lack of uniformity would cause it to catch and break either in the tension or knotter of the machine. A manufacturer of rope and twine testified that manufactured istle like that in controversy was used by him as a material for the making of tarred and untarred hay rope, hide rope, and baling rope.

From all the evidence in the case it is apparent that the importation is a manufacture of istle and therefore the only question to be determined is whether it is a mere material advanced in condition and designed for the making of something else, or whether notwithstanding its use as a processed material, it has reached the status of a completed manufacture entitled to a new name with an ultimate use wholly distinct from that of a material whether manufactured or unmanufactured.

The merchandise is thicker than a thread or the ordinary string, but smaller than the ordinary rope, and, consisting as it does of a large number of istle fibers twisted into a strand which is actually used in the making of rope, it is certainly a manufactured material. While the istle in issue is a manufactured material, however, it is at the same time a completed article ready for the ultimate consumer. It is not only a strand used in the making of rope but a strand actually used for tying bundles of small lumber, and a strand, the use and make-up of which entitles it to be called a cord.

*Cord.*—A string or small rope made by twisting several strands together; twine. (Standard Dictionary.)

*Cord.*—A string or small rope, or several strands twisted or woven together; also, such string as a material. (Webster's New International Dictionary.)

A cord may well be described as a large string or small rope and it therefore falls within the generic designation of cordage.

*Cordage.*—Ropes and cords in general; especially, ropes in the rigging of a ship; hence, anything resembling ropes; as, the twisted cordage of vines. (Standard Dictionary.)

*Cordage.*—Ropes or cords collectively; especially ropes in the rigging of a ship. (Webster's New International Dictionary.)

According to these definitions "cordage" has a meaning which makes the term specially applicable to the rigging of ships, but as we can not restrict the ordinary signification of the word in the absence of evidence tending to establish that it has a limited acceptation in the trade, we must hold that it was used by Congress in its popular sense.

Moreover, the limitation of the term "cordage" to the rigging of ships would exclude many ropes not used on ships and many ropes used on ships which form no part of the rigging, running or standing. (See rigging, running rigging, standing rigging—Standard Dictionary.) Such a result as that can not be presumed to have been intended by Congress, even if it were assumed that it was the legislative purpose to favor the shipping industry. In fact that "cordage" had no such limited commercial signification seems to be negatived, first, by the Treasury decisions, and, second, by a judicial interpretation of the word in the tariff acts of 1890 and 1909, which appears to have met with legislative approval inasmuch as the provision for "cordage" was reenacted in all subsequent tariff acts without amendment or change. (T. D. 9307, reversing T. D. April 21, 1858, and T. D. 9187; T. D. 13786 (G. A. 1980); T. D. 30944 (Abstract 23986). See "cordage," act of 1883; par. 362, act of 1890; par. 268, act of 1894; par. 329, act of 1897; par. 339, act of 1909; par. 268, act of 1913.)

We are of the opinion that the merchandise is a "cord" and is covered by the designation "cordage" as that term is commonly understood. To hold otherwise would result in assessing an inferior grade of cord with a very much higher rate of duty than that imposed on goods of the same general character, of much better quality, and requiring for their production far more elaborate processes of manufacture.

We think the provision for cordage is fairly and reasonably open to a construction more in accord with the policy which usually controls in the making of tariff laws than that contended for by the Government, and we must hold that the merchandise is not dutiable under paragraph 284, but under paragraph 268, as claimed by the importer.

The decision of the Board of General Appraisers is therefore *reversed.*