MONROE FOREIGN FORWARDING CO. *v.* UNITED STATES (No. 2708)[1]

COMMERCIAL DESIGNATION—CORDAGE—MANILA AND SISAL TWINE.

Twine, less than three-sixteenths of an inch in diameter, made by twisting two strands of manila or sisal fiber, is cordage within the common meaning of the word as assigned to it in paragraph 268, Tariff Act of 1913, by *Eagle Pass Lumber Co.* v. *United States*, 11 Ct. Cust. Appls. 134. But, with evidence, not shown to be insufficient, that, commercially, the word is definitely, uniformaly, and generally used to include nothing as small in diameter as three-sixteenths of an inch, and limiting the effect of this decision to the precise merchandise in this case, the judgment of the court below classifying it as a manufacture of vegetable fiber other than cotton (par. 1021, act of 1922), rather than cordage (par. 1005) must be affirmed.

United States Court of Customs Appeals, May 29, 1926

APPEAL from Board of United States General Appraisers, G. A. 9053, T. D. 41156

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *John A. Kemp*, special attorneys, of counsel), for the United States.
*Thomas F. Magner*, amicus curiae.

---

[1] T. D. 41699.

[Oral argument May 11, 1926, by Mr. Tompkins and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case was returned by the appraiser as manila and sisal twine under three-sixteenths of an inch in diameter. It was classified and assessed by the collector under paragraph 1021 of the act of 1922 as a manufacture of vegetable fiber not specially provided for.

Importers protested, claiming classification under paragraph 1005 of the act as cordage.

The material parts of these two paragraphs are as follows:

PAR. 1005. Cordage, including cables, tarred or untarred, wholly or in chief value of manila, sisal, or other hard fibers, * * * cordage, including cables, tarred or untarred, wholly or in chief value of sunn, or other bast fibers, but not including cordage made of jute, * * *

PAR. 1021. * * * all manufactures of vegetable fiber other than cotton, or of which such fibers or any of them is the component material of chief value, not specially provided for, * * *

The Board of General Appraisers overruled the protest.

Exhibits 1 and 2 were introduced in evidence as typical of the importation and are before us. Exhibit No. 1 is composed of sisal and is two ply. It consists of a large number of fibers or yarns marked as "500°" twisted into two strands, which strands are in turn twisted to make the exhibit. They are white and the testimony tends to show are hard fiber. Exhibit No. 2 is composed of manila and is two ply made of fibers or yarn marked as "1800°." They are of a brownish color and the testimony tends to show are hard fiber. It is much smaller than Exhibit 1, one of the plies of which is of greater diameter than the diameter of Exhibit 2.

The Board of General Appraisers found that Exhibit 1 was a little less than three-sixteenths, and Exhibit 2, about one-sixteenth of an inch in diameter.

In *Eagle Pass Lumber Co.* v. *United States*, 11 Ct. Cust. Appls. 134, merchandise composed of from 75 to 80 fibers of Mexican istle, twisted into a strand or cord, varying in thickness from one-sixteenth to one-eighth of an inch, was under consideration by this court. It was held to be cordage within the common meaning of that word, as used in paragraph 268 of the tariff act of 1913, which is similar to paragraph 1005 of the present act, and it is, in effect, conceded by all parties that the importation here, within the rule of that opinion, would be properly classifiable as cordage under paragraph 1005 unless, as the Government and *amicus curiae* contend and the Board of General Appraisers held, it is established in this case that the term cordage, as used in the latter paragraph, when understood in its commercial sense, does not include the same.

A large number of exhibits in the way of trade catalogues, price lists, and printed documentary evidence were introduced in the hearing before the board and are before us. At the hearing the importer called two witnesses, whose testimony tends to support its contention that the term "cordage" has no general, definite, and uniform trade meaning different from the common meaning thereof as defined by this court in the *Eagle Pass Lumber Co.* case.

The Government having raised the issue of commercial designation, it became incumbent upon it to establish by a fair balance of the testimony the fact that the word "cordage," as used in the trade and commerce of this country at the date of the enactment of the present act, did not include such articles as the present importation.

The issue, therefore, is whether or not the Government has successfully assumed the burden thus cast upon it, in determining which the well-settled rule must be borne in mind, viz, that in order to establish a commercial meaning differing from the common meaning of the term employed, it must appear that such claimed meaning, as used, is definite, uniform, and general in our trade and commerce, and not partial, local or personal.

To discharge that burden, the Government called some 18 witnesses, the testimony of the most of whom tends to support its contention, and while there is something to be said in favor of the importer's argument that such testimony discloses some differences of opinion as to the meaning of cordage in the trade and commerce of this country, yet on the whole we can not say that it lacks probative force, uniformity, definiteness, and certainty sufficient to justify a reversal of the board's finding thereon as contrary to or not supported by the evidence.

It is argued by importer that in its opinion the board does not go so far as to state that at the time and prior to the passage of the present act, the commercial meaning was, in fact, general, definite, and uniform in the trade, which must be conceded. Nevertheless, it is apparent, when the testimony is considered, and in view of the fact that the board explicitly found "that the term 'cordage' " as understood in the trade and commerce of the United States, embraces only cords, ropes, and cables not less than three-sixteenths of an inch in diameter, that we are not warranted in reversing the finding below, even though if the question were, in the first instance, to be passed upon by this court, we might have hesitated to come to the same conclusion.

Limiting the effect of this decision to the precise merchandise in this case, we think the judgment of the board (now the United States Customs Court) ought to be and it is, therefore, *affirmed.*